Willie Earl CAMPBELL *v.* STATE of Arkansas

CR 78-106                                    571 S.W. 2d 597

Opinion delivered October 16, 1978
(In Banc)

*Don Langston* and *John W. Settle,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Jesse L. Kearney,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. As a result of having shot Tommy Thacker four times the appellant was convicted of first-degree battery and sentenced to 20 years' confinement. As a result of having shot James Lyons one time the appellant was convicted at the same trial of second-degree battery and sentenced to 3 years' confinement. At the defendant's request

the trial court gave him credit for 372 days of jail time, even though, as the court pointed out, approximately a year of that time was spent in custody pursuant to a misdemeanor conviction in municipal court for a separate offense. The principal argument for reversal is that the appellant was denied his constitutional and statutory right to a speedy trial.

The applicable Rule provides that an accused in custody shall be brought to trial before the end of the second full term of court, but not to exceed nine months. Rule 28.1, Rules of Criminal Procedure (1976). There shall be excluded from the computation any period of delay resulting from a continuance granted at the request of the defendant or his counsel. Rule 28.3 (c). The key question is whether a continuance was granted at the request of Campbell or his counsel.

In the Fort Smith District of Sebastian County the terms of court begin on the first Monday in February, June, and October. Ark. Stat. Ann. § 22-310 (Supp. 1977). Campbell was arrested and incarcerated on January 18, 1977, during the October 1976 term. He was charged by information on February 17, during the February 1978 term. The public defender was appointed as his counsel, and the case was set to be tried on May 23.

On May 17 the public defender notified the court that Campbell did not desire his services. The public defender requested a hearing, which was held on May 23, the day set for trial. In response to the court's inquiry why Campbell did not want the public defender to represent him, Campbell replied: "Because if I'm going to get railroaded, I may as well get railroaded on my own account." No other explanation appears in the record.

In response to further questions by the court Campbell said he believed that his grandmother in Pine Bluff or his relatives in Kansas City might be able to help him get an attorney. He had written several letters to his grandmother, but had not yet written to the other relatives. The transcript of the hearing concludes as follows:

The Court: Well, we will give you ten days to get an

attorney, Mr. Campbell.

Mr. Campbell: Yes, sir.

The Court: If you don't have one by that time you will just have to take an appointed attorney.

The Public Defender: He stated he would rather represent himself, Your Honor. Now, I don't know whether he wants to hold to that or not. If he doesn't have one, you might want to inquire further about it.

The Court: You have the right to represent yourself if you want to.

Mr. Campbell: (Nods head in affirmative.)

The Court: Is that what you want to do if you are not able to hire one yourself?

Mr. Campbell: Yes, sir. That is correct.

The Court: Within ten days, then, if you don't have an attorney, you may represent yourself. Thank you. You may have a seat.

In July the prosecuting attorney wrote the judge that he had met with Campbell at the judge's request, that Campbell still did not want the public defender to represent him, and that Campbell had warned "that he might blow up in the courtroom, particularly if he is representing himself and may do physical harm to either you or myself."

In December the case was set for trial on January 24. At a pretrial hearing on January 18 Campbell again refused the public defender's services. He had not obtained an attorney. He was again told that he could represent himself and that the public defender would be available at the trial as his advisor (which is what happened). Campbell named seven witnesses that he wanted, and they were subpoenaed. The trial was held on January 24, as scheduled. At the trial Campbell, with the help of the public defender, called three witnesses in his defense and elected not to testify himself.

It must be remembered that the State offered Campbell a speedy trial on May 23. We find that the case was continued at his request. On that date he rejected the public defender's services without stating any real reason. He indicated that he hoped to obtain an attorney with the assistance of his relatives. He acquiesced in the court's decision to give him ten days in which to employ an attorney. He

was not ready for trial, in that he had not requested that his witnesses be subpoenaed. If he had been forced into a trial on that date, he could fairly have complained that he had not been afforded an opportunity to obtain counsel of his own choice. In the circumstances the continuance was granted at his request. Certainly it was not granted at the State's request.

Inasmuch as the case was tried on January 24, during the October 1977 term, it was held within the statutory time allowed after the continuance in May. There is no basis for a finding that there was any violation of Campbell's constitutional right to a speedy trial. He was given full credit for his jail time, even though it was not attributable primarily to his arrest upon these charges, and there is no other indication that the delay was prejudicial.

It is also argued that Campbell's cross-examination of a prosecuting witness, Tommy Thacker, was unduly restricted by the court. Thacker had admitted on direct examination that he had been convicted of a felony, had served part of his sentence, and had been out on parole for two years. On cross-examination the court sustained the State's objection, on the ground of irrelevancy, to Campbell's question: "What was the actual date and time that you received, or were sent to the penitentiary?" The point is actually somewhat trivial, but we think the court was right in sustaining the objection. A witness's credibility may be impeached by proof of a crime (1) of specified gravity, if the court finds that its probative value outweighs its prejudicial effect to the witness, or (2) involving dishonesty or false statement. Uniform Rules of Evidence, Rule 609 (a), Ark. Stat. Ann. § 28-1001 (Supp. 1977). Even if we assume that the crime of robbery, for which the witness had been convicted, comes within the Uniform Rule, it is the fact of conviction that impairs the witness's credibility, not the date of the sentence or its length. We certainly cannot say that there was a prejudicial abuse of the trial court's discretion in its refusal to allow Campbell to bring out those inconsequential details.

Affirmed.

HOWARD, J., not participating.